| | | |
|---|---|---|
| RHONDA GOEKE, individually and<br>on behalf of all others similarly situated, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| | ) | Case No.: 3:14-cv-00806-NJR-DGW |
| v. | )<br>) | **JURY TRIAL DEMAND** |
| REVOLUTION LABORATORIES L.L.C., | ) | |
| JOSHUA NUSSBAUM, | ) | |
| REV LABS MANAGEMENT INC., | ) | |
| TERRY MONCADA, | ) | |
| L.R. NEVADA INVESTMENTS LLC, | ) | |
| LR NEVADA INVESTMENTS-JC | ) | |
|   MANAGEMENT LLC, | ) | |
| LR NEVADA INVESTMENTS-MP | ) | |
|   MANGEMENT LLC, and | ) | |
| BARRY NUSSBAUM, | )<br>) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Rhonda Goeke, by and through undersigned counsel, brings this class action complaint, individually and on behalf of all others similarly situated, against Revolution Laboratories L.L.C., Joshua Nussbaum, Rev Labs Management Inc., Terry Moncado, L.R. Nevada Investments LLC, LR Nevada Investments-JC Management LLC, LR Nevada Investments-MP Management LLC, and Barry Nussbaum (collectively, "Defendants"). Plaintiff's allegations are based upon personal knowledge as to her own acts and upon information and belief as to all other matters.

### Nature of the Action

1.     Plaintiff brings this class action against Defendants for violations of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2, and the Illinois Uniform

Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/2, and the federal Electronic Funds Transfer Act, EFTA § 907(a), 15 U.S.C. § 1693e(a); Regulation E § 205.10(b), 12 C.F.R. § 205.10(b), arising out of Defendants' sale of "Green Coffee Bean Extract" pills to Plaintiff in Illinois and failing to disclose material information about the true length of its 14-day free trial program, for enrolling Plaintiff in a negative option 6-month purchase commitment without her consent, and for making 5 unauthorized charges against her credit/debit card on a recurring basis without providing Plaintiff with a copy of a written authorization signed or similarly authenticated authorization for preauthorized electronic fund transfers from their accounts.

**Parties**

2.      Plaintiff, Rhonda Goeke, is a resident of DuQuoin, Illinois, located in Perry County within this judicial district.

3.      Defendant Revolution Laboratories L.L.C. ("Revolution Laboratories") is a domestic limited liability company registered in Nevada and headquartered in Solana Beach, California, operating as a direct-to-consumer online retail company that advertises and sells the "Green Coffee Bean Extract" weight-loss dietary supplement in California and throughout the United States via internet websites, including to Plaintiff in Perry County, Illinois.

4.      Defendant Joshua Nussbaum is a resident of California, and is a co-founder, a partner, a member, and an executive officer of Revolution Laboratories. At all times material to this Complaint, acting alone or in concert with others, Defendant Joshua Nussbaum formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. In connection with the matters alleged

herein, Defendant Joshua Nussbaum transacts business in the states of California and Nevada and throughout the United States, including in the state of Illinois.

5.     Defendant Rev Labs Management Inc. ("Rev Labs Management") is a domestic corporation registered in Nevada and headquartered in Henderson, and is the Manager of Defendant Revolution Laboratories, a limited liability company.  At all times material to this Complaint, acting alone or in concert with others, Defendant Rev Labs Management formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  In connection with the matters alleged herein, Defendant Rev Labs Management transacts business in the states of California and Nevada and throughout the United States, including in the state of Illinois.

6.     Defendant Terry Moncada, is a resident of Nevada, and is a co-founder, a partner, and executive officer of Rev Labs Management, which in turn is the Manager of Revolution Laboratories.  At all times material to this Complaint, acting alone or in concert with others, Defendant Terry Moncada has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  In connection with the matters alleged herein, Defendant Terry Moncada transacts business in the states of California and Nevada and throughout the United States, including in the state of Illinois.

7.     Defendant L.R. Nevada Investments LLC is a domestic limited liability company registered and headquartered in Nevada, owned and operated by Defendants Joshua Nussbaum and Barry Nussbaum, which owns real property in and around the city of Las Vegas in Clark County, Nevada.  In connection with the matters alleged herein, it is alleged that Defendant L.R. Nevada Investments LLC received ill-gotten gains

generated by the illegal conduct of Defendants Revolution Laboratories, Joshua Nussbaum, Rev Labs Management, and Terry Moncada.

8.      Defendant LR Nevada Investments-JC Management LLC is a domestic limited liability company registered and headquartered in Nevada owned and operated by Defendants Joshua Nussbaum and Barry Nussbaum, which owns real property in and around the city of Las Vegas in Clark County, Nevada. In connection with the matters alleged herein, it is alleged that Defendant L.R. Nevada Investments-JC Management LLC received ill-gotten gains generated by the illegal conduct of Defendants Revolution Laboratories, Joshua Nussbam, Rev Labs Management, and Terry Moncada.

9.      Defendant LR Nevada Investments LLC-MP Management LLC is a domestic limited liability company registered and headquartered in Nevada owned and operated by Defendants Joshua Nussbaum and Barry Nussbaum, which owns real property in and around the city of Las Vegas in Clark County, Nevada. In connection with the matters alleged herein, it is alleged that Defendant LR Nevada Investments-MP Management LLC received ill-gotten gains generated by the illegal conduct of Defendants Revolution Laboratories, Joshua Nussbaum, Rev Labs Management, Joshua and Terry Moncada.

10.      Defendant Barry Nussbaum is a resident of Nevada and is the co-owner and manager of Defendant L.R. Nevada Investments LLC, LR Nevada Investments-JC Management LLC, and LR Nevada Investments-MP Management LLC.  In connection with the matters alleged herein, it is alleged that through his management of the L.R. Nevada Investments LLC, LR Nevada Investments-JC Management LLC, and LR Nevada Investments-MP Management LLC, Defendant Barry Nussbaum received the

benefit of and re-directed ill-gotten gains generated by the illegal conduct of Defendants Revolution Laboratories, Joshau Nussbaum, Rev Labs Management, and Terry Moncada.

11.    Defendants have operated as a common enterprise while engaging in deceptive, unfair, and unlawful acts and practices alleged below.  Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, office locations, and have commingled funds.  Because Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.

### Jurisdiction and Venue

12.    Plaintiff's claims arise out of Defendants' internet advertisement and sale of a dietary supplement called "Green Coffee Bean Extract" to Plaintiff in Perry County, Illinois.

13.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, which confers upon the Court original jurisdiction over all civil action arising under the laws of the United States.  This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

14.    In addition, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action in excess of five million dollars ($5,000,000.00) exclusive of interest and costs, and because Plaintiff and many members of the putative Class are citizens of different states than Defendants.

15.    This Court has personal jurisdiction over Defendants pursuant to the Illinois long-arm statute, 735 ILCS 5/2-209(a)(1) and (a)(2), because Defendants

transacted business within the State of Illinois by selling dietary supplements to an Illinois resident and because Defendants committed a tortious act within the State of Illinois through its illegal, unfair, and deceptive trade practices.

**General Allegations of Fact**

16.     Since at least August of 2012, Defendants have advertised, marketed, promoted, offered for sale, and sold numerous weight loss dietary supplements via internet websites throughout the United States, including a dietary supplement marketed as "Green Coffee Bean Extract."

17.     Defendants offer their products to Plaintiff and Class members through a variety of channels, including numerous websites or "landing pages" that Defendants own and operate such as, among others, www.greencoffeebeanrevolution.com.



(www.greencoffeebeanrevolution.com last viewed 7/15/2014).

18.     Defendants' products are also promoted to Plaintiff and Class members via internet social media sites, such as Facebook, Twitter, and YouTube.



(www.facebook.com/RevLab/info last viewed 7/15/2014).

19.     Defendants also offer their products to Plaintiff and Class members through a variety of third-party channels, including numerous websites or "landing pages" that Defendants authorize and pay for each free trial prospect that page redirects to Defendants' landing page, such as, among others, www.greencoffeebeantrial.info.



\*     \*     \*

About | Terms & Conditions | Disclaimer | Privacy Policy | Contact | Site Map

We are compensated for each sale / free trial
Greencoffeebeantrial.info © Copyright 2012. All Rights Reserved.

([www.greencoffeebeantrial.info](http://www.greencoffeebeantrial.info) last viewed 7/15/2014).

### A.    Defendants' "Green Coffee Bean Extract" Product Claims

20.    Defendants claim that each "Green Coffee Bean Extract" pill capsule contains 750 milligrams of green coffee bean and "not less than 50% caffeine."

21.    In their internet advertising, Defendants claim that their "Green Coffee Bean Extract" pill is a SUPER FAT BUSTER containing "very high concentrations" of "chlorogenic acid" which "inhibits the release of glucose in into the blood, particularly

after meals" and which "may also be able to induce body fat loss by increasing body heat produced, thus promoting thermogenesis, the natural burning of fat for energy."



**SUPER FAT BUSTER!**

Green Coffee Beans have been shown to inhibit fat absorption and also stimulate the activation of fat metabolism in the liver, both major supporters of weight reduction. The Chlorogenic acid found in Green Coffee Beans is a natural phytochemical that is found in a wide array of plants, with very high concentrations in Green Coffee Beans. It has been found to inhibit the release of glucose into the blood, particularly after meals, and appears to help people lose weight as a result. Chlorogenic acid may also be able to induce body fat loss by increasing body heat produced, thus promoting thermogenesis, the natural burning of fat for energy. It is also believed to reduce the generation of new fat cells due to its superior anti-oxidant effects.

(www.greencoffeebeanrevolution.com last viewed 7/15/2014).

22. Defendants represent on their websites that if Plaintiff and Class members use "Green Coffee Bean Extract" pills they will lose a substantial amount of weight.

23. For example, typical weight-loss representations made by Defendants on their own and their agents' websites and social media pages include, but are not limited to, the following:

(a) "BURN FAT & LOSE WEIGHT 100% NATURALLY"

**BURN FAT & LOSE WEIGHT 100% NATURALLY!**

(www.greencoffeebeanrevolution.com last viewed 7/15/2014);

(b) "Lose Fat: BURN FAT WITHOUT MORE EXERCISE"





([www.greencoffeebeanrevolution.com](www.greencoffeebeanrevolution.com) last viewed 7/15/2014);

      (c)      "Boost Results: ENHANCE FAT-LOSS EFFECTS FROM DIET"



([www.greencoffeebeanrevolution.com](www.greencoffeebeanrevolution.com) last viewed 7/15/2014);

      (d)      "Transform: REAL RESULTS THAT EVERYONE CAN SEE"



([www.greencoffeebeanrevolution.com](www.greencoffeebeanrevolution.com) last viewed 7/15/2014);

      (e)      "SUPER FAT BUSTER!"



(www.greencoffeebeanrevolution.com last viewed 7/15/2014);

      (f)      "The Little Green Bean That BURNS FAT FAST!"

(www.greencoffeebeanrevolution.com last viewed 7/15/2014);

      (g)      "With a healthy breakfast, an active metabolism, your body will have an easier time slicing up fat and burning it off"

      (h)      "As you sleep, your body will be burning away unwanted fat tissue!"



([www.greencoffeebeanrevolution.com](www.greencoffeebeanrevolution.com) last viewed 7/15/2014);

     (i)     "Melt Away Fat!"



([www.greencoffeebeantrial.info](www.greencoffeebeantrial.info) last viewed 7/15/2014);

     (j)     "Cut Away The Body Fats."

Feel Healthy! Look Sexy! Cut Away The Body Fats.

([www.greencoffeebeantrial.info](www.greencoffeebeantrial.info) last viewed 7/15/2014);

     (k)     "Discover the New Revolutionary Weight Loss Formula."

     (l)     "Effective Way to Rid Unwanted Fats & Cleanse Your Body."

Discover the **New Revolutionary Weight Loss** Formula.
Effective Way to Rid Unwanted Fats & Cleanse Your Body

([www.greencoffeebeantrial.info](www.greencoffeebeantrial.info) last viewed 7/15/2014);

     (m)     "With Green Coffee Bean Extract, you can blast away fats faster and keep your metabolism fired up all day. This astonishing weight loss supplement is made with natural Green Coffee Bean Extract, which helps burn body fat and makes you get lean and healthy, without having to follow any fad diet or rigorous exercise regime."

brewing in the weight loss arena today, the Green coffee bean extract revolution has begun. With **Green Coffee Bean Extract,** you can blast fats faster and keep your metabolism fired up all day long. This astonishing weight loss supplement is made with natural Green Coffee Bean Extract, which helps burn body fat and makes you get lean and healthy, without having to follow any fad diet or rigorous exercise regimen. But if you are aspiring for more astonishing results, try combining it with **Colothin Cleanse,** a colon

(www.greencoffeebeantrial.info last viewed 7/15/2014); and

<blockquote>

(n)   "Cut Away the Body Fat"

(o)   "no more calorie counting"

(p)   "no more confusing systems"

(q)   "no more food deprivations"

(r)   "no more crazy dieting"

</blockquote>



(www.greencoffeebeantrial.info last viewed 7/15/2014).

24.    Defendants' websites also prominently display implied testimonials of purported customers who have lost substantial of weight using "Green Coffee Bean Extract" to Plaintiff and Class members. For example, typical testimonials made by purported customers include, but are not limited to, the following:

13

(a)       "Lose up to 20 lbs!"

(b)       "Lost 18 Pounds"

(c)       "Lost 54 Pounds"



([www.greencoffeebeanrevolution.com](www.greencoffeebeanrevolution.com) last viewed 7/15/2014).

25.     Contrary to Defendants' misrepresentations to Plaintiff and Class members, "Green Coffee Bean Extract" does not cause substantial weight loss, nor do Defendants possess and rely upon a reasonable basis to substantiate representations that consumers who use "Green Coffee Bean Extract" will lose a substantial amount of weight.

**B.     Defendants' 14-Day "Free" Trial Package**

26.     Defendants represent that their products are offered to Plaintiff and Class members on a "free" trial, "100% satisfaction guaranteed" basis and represent that consumers need only pay a nominal charge, usually for shipping and handling. Defendants typically have represented that the offered trial is available only for a limited time.

27.     Defendants make representations about the purported satisfaction-guaranteed, "free" nature of their trial programs on the first page of their websites. For

example, the first page of Defendants' websites offering "Green Coffee Bean Extract" prominently include the following statements, respectively:

      (a)     "CLAIM YOUR BOTTLE TODAY!"

      (b)     "Satisfaction 100% Guaranteed"

      (c)     "RUSH MY ORDER!"



(www.greencoffeebeanrevolution.com last viewed 7/15/2014).

      28.     After Plaintiff and Class members enter their email and physical addresses (which are often their billing addresses as well), Defendants make specific representations about the purported "free" or satisfaction-guaranteed nature of their trial programs on the top half of the second page of their websites. For example, Defendants make the following representations:

      (a)     "'Revolutionary Green Coffee Bean Trial"

      (b)     "14-Day Trial Package"

      (c)     "No Commitments or Hidden Fees"

      (d)     "100% Satisfaction Guaranteed"

      (e)     "Free Trial Promo"



## GET READY FOR YOUR BEST BODY EVER!

**Revolutionary Green Coffee Bean Trial**     $0.00
- 14-Day Trial Package
- No Commitments or Hidden Fees
- 100% Satisfaction Guaranteed
- Top Quality Ingredients

**+ Weight Loss E-Book ($14.95 Value)**     $0.00
- Written by Certified Trainer
- Tried and True Methods for Weight Loss

| | |
|---|---|
| **Shipping:** | $9.95 |
| **Free Trial Promo:** | $-5.00 |
| **Total:** | $4.95 |

(www.greencoffeebeanrevolution.com/order.php last viewed 7/15/2014).

29.　After Plaintiff and Class members enter their payment information on Defendants' websites, ostensibly to pay the nominal shipping charge, Defendants then ship a one-month supply of "Green Coffee Bean Extract" to the consumer. This represents the "free" trial product.

30.　Defendants specifically represent that that the "free trial" period is 14 days.

## Revolutionary Green Coffee Bean Trial
### - 14-Day Trial Package

31.　Plaintiff and Class members are led to believe that they have 14 days to sample the product. In actual fact, Defendants commence the 14-day trial period on the date consumers <u>place</u> the order, not on the day that consumers <u>receive</u> the order.

Defendants do not disclose this fact at the point of sale where the consumers enter their credit or debit card information.



(www.greencoffeebeanrevolution.com/order.php last viewed 7/15/2014).

32.     In order to avoid being charged the full $84.63 purchase price for this allegedly "free" trial bottle of pills, Plaintiff and Class members are required to call Defendants and cancel the trial within 14 days from the date consumers placed their order—not the date that consumers received their product.

33.     Defendants do not disclose to Plaintiff and Class members at the point of sale that the 14-day trial period is 14 calendar days as opposed to 14 business days.

34.     Defendants claim to ship the order on the next business day after the order is placed and claim that the order may not be delivered for 2-5 days after being shipped. Thus, if a consumer placed an order on a Saturday—day 1 of 14—the product would not ship until Monday—day 3 of 14—and may not arrive until the following Saturday five days after being shipped—day 8 of 14—she would only have 6 days out of a supposed 14 days to try the product and determine if she wished to cancel or purchase.

35.     The "free" trial is illusory, deceptive, and fraudulent.  Consumers who agree to the trial have significantly less than 14 days to actually test the product because they must cancel within 14 days of the day they placed the order, not the day they received the product.  Given the time for order fulfillment and shipping, the typical consumer has less than a week to test the product and determine whether to purchase the product at the price of $84.63 at the end of the trial period.

36.     The 14-day trial is also illusory, deceptive, and fraudulent because there is evidence that Defendants charge consumers' credit/debit cards for the full purchase price during the alleged trial period.  In Plaintiff's case, Defendants charged her credit card $4.95 on July 8, 2013, for the trial product shipping cost.  Defendants then charged her credit card $84.63 on July 19, 2013, for the full product price—just 11 days later and well within the 14-day trial period.

37.     Defendants consider all sales of the trial product "final" and refuse to refund the purchase amount. In the end, every consumer who agrees to the "free" trial ends up paying at least $84.63 to Defendants.

**C.     Defendant's 6-Month Negative Option Purchase Commitment**

38.     Defendants specifically represent that the "free" trial includes "No Commitments."

## Revolutionary Green Coffee Bean Trial

- 14-Day Trial Package
- No Commitments or Hidden Fees

39.     Defendants do not disclose at the point of sale where the consumers enter their credit or debit card information that consumers agree to a 6-month negative option purchase commitment by agreeing to the 14-day trial period.

40.     Defendants vaguely reference a 6-month "membership" in small font at the point of sale, but do not explain or define it in any way.

41.     Instead, Defendants bury this information buried in a small-font paragraph that can only be found by scrolling to the very bottom of the webpage where the information is buried halfway into the paragraph's prose.

Details: Your membership starts off with a fee of $4.95 to enroll you in the program and receive your first 30 day bottle. We ship the product the day after you place your order (except that orders placed Saturday-Sunday will be shipped the following Monday). Please allow 2-5 business for the order to arrive. Your membership will be canceled after the 6 month term expires, so if you wish to continue your membership you will need to contact customer service and request that that be done. You can reach a customer service agent by calling us at 888-973-8522 or email us during normal business hours: Mon - Fri, 8am - 4pm Pacific Time. If you are not satisfied with your trial order please call within 14 days of your order to cancel. If you don't cancel before the end of the 14 day trial time, you will be charged the full price of $84.63 for the trial product in hand and then you will be sent a new supply 45 days from the initial sale, followed by a new 30 day supply every thirty days thereafter until cancel or the maximum of 6 months. Please read our terms and conditions for complete details and return/refund policies.

([www.greencoffeebeanrevolution.com/order.php](www.greencoffeebeanrevolution.com/order.php) last viewed 7/15/2014).

42.     Consumers are lead to believe that the 14-day trial is without a commitment.  In actual fact, without Plaintiff's or Class members' consent, Defendants subscribe consumers to a 6-month purchase commitment in which Defendants

automatically ship monthly supplies of the product to consumers and charge consumers the full $84.63 price every 30 days unless the consumer calls the customer service telephone number and cancels. The monthly shipments and charges begin 30 days after consumers are charged for the "free" trial product.

43.     The first page of Defendants' website containing their promotional statements and representations concerning the trial offer do not disclose that by requesting the "free" trial of Defendants' products, consumers will be enrolled in a negative option, automatic shipment program whereby they will incur a continuing month-to-month obligation to pay for monthly supplies of the product.

44.     Defendants have collected payments from Plaintiff and Class members by charging the credit/debit card accounts that they previously provided to pay for the one-time nominal shipping fee associated with the "free" trial for the additional, continuing, recurring monthly shipments without obtaining Plaintiff's or Class members' express written authorization signed or similarly authenticated for preauthorized electronic fund transfers.

45.     Plaintiff and Class members first become aware of their enrollment in Defendants' negative option 6-month commitment when they receive their second shipment of product from Defendant or when they see Defendants' charges on their credit/debit card bills. By this time, Defendants already have charged consumers not only for the allegedly "free" trial shipment, but also for the second shipment.

46.     Upon information and belief, in instances when Defendants' charges to consumers' credit or debit cards are rejected, either because the consumer has insufficient funds or has closed the account, Defendants have aggressively attempted to collect the

purported "debt" by sending consumers letters or calling them demanding payment, and by threatening to send consumers' purported "delinquent" accounts to third-party collection agencies, and telling them that this will harm their credit ratings and result in additional hefty fees.

47.     Defendants fail to disclose in clear and conspicuous manner the fact that by agreeing to accept the "free" trial product, consumers are agreeing to receive and pay for additional product unrelated to the trial.

### D.     Defendants' Joint and Several Liability

48.     Defendants have operated as a common enterprise while engaging in deceptive, unfair, and unlawful acts and practices alleged herein.  Defendants have conducted the business practices and benefited from the ill-gotten gains described herein through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, office locations, and have commingled funds. Because Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged above and below.

49.     As described herein, Defendants have deceived hundreds, if not thousands, of consumers in Illinois and across the country out of millions of dollars.  The acts and practices alleged herein also have generated consumer complaints to the Better Business Bureau.

50.     Defendants' unfair, deceptive, and unconscionable business practices generated sales of "Green Coffee Bean Extract" in excess of five million dollars ($5,000,000.00) over the past three years.

51.     Upon information and belief, the ill-gotten monies received by Defendant Revolution Laboratories LLC through its unfair, deceptive, and unconscionable business practices have been distributed to Defendants Joshua Nussbaum, Rev Labs Management Inc., and Terry Moncada.

52.     Upon information and belief, the ill-gotten monies received by Defendant Revolution Laboratories LLC through its unfair, deceptive, and unconscionable business practices and distributed to Defendant Joshua Nussbaum have been hidden and comingled into Defendant L.R. Nevada Investments LLC, managed by Defendant Barry Nussbaum, and used to purchase 30 parcels of real property in and around Las Vegas, Clark County, Nevada.

53.     Upon information and belief, the ill-gotten monies received by Defendant Revolution Laboratories LLC through its unfair, deceptive, and unconscionable business practices and distributed to Defendant Joshua Nussbaum have been hidden and comingled into Defendant LR Nevada Investments-JC Management LLC, managed by Defendant Joshua Nussbaum, and used to purchase 20 parcels of real property in and around Las Vegas, Clark County, Nevada.

54.     Upon information and belief, the ill-gotten monies received by Defendant Revolution Laboratories LLC through its unfair, deceptive, and unconscionable business practices and distributed to Defendant Joshua Nussbaum have been hidden and comingled into Defendant LR Nevada Investments-MP Management LLC, managed by Defendant Barry Nussbaum, and used to purchase 7 parcels of real property in and around Las Vegas, Clark County, Nevada.

**Allegations of Fact Specific to Plaintiff Rhonda Goeke**

55.     On or about July 8, 2013, Plaintiff clicked on a Facebook ad which redirected her to Defendants' website, www.greencoffeebeanrevolution.com

56.     Plaintiff reviewed Defendants' representations on the first page of their website regarding "Green Coffee Bean Extract," including the representations that she could "BURN FAT WITHOUT MORE EXERCISE" and "Lose up to 20 lbs" with pills that sliced up fat and burned it off "24 Hours a Day" with her "SATISFACTION 100% GUARANTEED."

57.     Based upon these representations, Plaintiff decided to take advantage of Defendants' offer to "claim" her trail bottle.

58.     Plaintiff submitted her contact information, including her email address, on the first page of Defendants' website and clicked the "RUSH MY ORDER!" button.

59.     Plaintiff reviewed Defendants' representations on the second page of their website regarding the 14-day trial package, including the representations that there were "No Commitments or Hidden Fees," and that her satisfaction was "100% Guaranteed."

60.     Based upon these representation, Plaintiff submitted her credit card information on the second page of Defendants' website and clicked the "Rush My Order!" button.

61.     Defendants charged Plaintiff's credit card account for $4.95 on July 8, 2013.

62.     At the time that Plaintiff placed her order, unbeknownst to Plaintiff and without her consent, Defendants automatically subscribed Plaintiff into their 6-month

negative option purchase commitment continuity program for their "Green Coffee Bean Extract" product.

63.    Plaintiff received the trial bottle of "Green Coffee Bean Extract" by standard United States Postal Service parcel post on or about July 13, 2013.

64.    The "free" trial period lasted until July 21, 2013 (by Defendants' terms Plaintiff learned long after the fact).

65.    Without Plaintiff's written authorization, Defendants charged her credit card account for $84.63 on July 19, 2013.  Defendant charged Plaintiff for the trial bottle during the 14-day "free" trial period.

66.    Without Plaintiff's written authorization, Defendants charged her credit card account for $84.63 on August 19, 2013.

67.    Without Plaintiff's written authorization, Defendants charged her credit card account for $84.63 on September 16, 2013.

68.    Without Plaintiff's written authorization, Defendants charged her credit card account for $84.63 on October 16, 2013.

69.    Without Plaintiff's written authorization, Defendants charged her credit card account for $84.63 on November 15, 2013.

70.    On or about November 30, 2013, Plaintiff realized Defendants had been charging her credit card account without her authorization and called the telephone number on the credit card statement to cancel the charges.

71.    Defendants refused to refund her the $423.15 they had collected from her credit card account.

72.     Plaintiff suffered damages in the amount of $423.15 as a result of Defendants' illegal conduct.

### Class Action Allegations

73.     Plaintiff Rhonda Goeke seeks to represent a Class ("Class 1") defined as:

> "All persons in the United States who ordered and paid for the 14-Day Trial Package of "Green Coffee Bean Extract" from Revolution Laboratories L.L.C. at any time after July 15, 2011, and were subscribed into the 6-month negative option purchase commitment at any time during or after the expiration of the 14-day trial period by the sellers."

74.     Plaintiff Rhonda Goeke seeks to represent a second Class ("Class 2") defined as:

> "All persons in the United States who ordered and paid for the 14-Day Trial Package of "Green Coffee Bean Extract" from Revolution Laboratories L.L.C. at any time after July 15, 2013, and who had their credit or debit cards charged for the full purchase price of the product at any time after the expiration of the 14-day trial period by the sellers without a written authorization to do so."

75.     Excluded from both Class 1 and Class 2 are Defendants, Defendants' affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators, and anyone who purchased "Green Coffee Bean Extract" for resale.  Also excluded are any judges, judicial officers and/or judicial staff members directly presiding over this matter and the members of their immediate families.

76.     This action is properly maintainable as a class action pursuant Rule 23 of the Federal Rules of Civil Procedure, Fed R. Civ. P. 23, and is desirable for the reasons set forth below.

77.     Members of the Classes are so numerous that their individual joinder is impracticable.  The precise number of Class members and their identities are unknown to

Plaintiff at this time, but will be determined through discovery of Defendants' customer records. Class members may be notified of the pendency of this action by direct email address or shipping addresses retained by Defendants, and/or publication.

78.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to:

(a)     Whether Defendants' representations to Class 1 members were either false, misleading, fraudulent, made under false pretense, false promises, misrepresentations or omissions of material fact, or such that they created a likelihood of confusion or misunderstanding;

(b)     Whether Defendants' false or misleading representations to Class 1 members were knowingly made in connection with the sale of "Green Coffee Bean Extract;"

(c)     Whether Defendants' false or misleading representations to Class 1 members were willfully made in connection with the sale of "Green Coffee Bean Extract;"

(d)     Whether Defendants' conduct toward Class 1 members occurred in the regular course of their trade or commerce;

(e)     Whether Defendants' conduct resulted in actual damage to the Class 1 members;

(f)     Whether the Class 1 members' damages were proximately caused by Defendants' conduct;

(g) Whether Defendants violated the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/2 ("ICFA");

(h) Whether Defendants violated the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 ("UDTPA");

(i) Whether Defendants violated the Nevada Deceptive Trade Practices Act, NRS 598 ("NDTPA");

(j) Whether Defendants obtained a written authorization from Plaintiff and Class 2 members to charge their credit or debit cards for the purchase price of the products; and

(k) Whether Defendants violated the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.*

79. Plaintiff's claims are typical of the claims of the proposed Classes. Each Class 1 and Class 2 member was subjected to the same illegal conduct, was harmed in the same way, and has claims for relief under the same legal theories.

80. Plaintiff is an adequate representative of the Classes she seeks to represent because her interest do not conflict with the interests of the Class 1 or Class 2 members she seeks to represent, she has retained counsel competent and experienced in prosecuting class actions, and she intends to vigorously prosecute this action. Plaintiff and her counsel will fairly and adequately protect the interests of the Class members.

81. The class mechanism is superior to other available means for fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.

Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

82.     Unless a class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and Class members. Unless a class-wide injunction is issued, Defendants will continue to commit the violations of law alleged, and the members of the Class and the general public will continue to be harmed.

### COUNT I

**Violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, and of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.**

83.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

84.     Plaintiff brings this claim individually and on behalf of members of the proposed Class 1 against Defendants.

85.     The purpose of the Illinois Consumer Fraud and Deceptive Practices Act (ICFA) and the Illinois Uniform Deceptive Trade Practice Act (UDTPA) is to protect consumers against fraud and unfair and deceptive acts in the conduct of trade and commerce.

86.     To make a *prima facie* claim for violation of the ICFA, Plaintiff must show the following, in pertinent part:

(a)     Defendants made statements or other representations that were either false or misleading, or fraudulent, or false promises, or misrepresentations, or the concealment, suppression or omission of material facts ("false or misleading representations");

(b)     Defendants' false or misleading representations were made with the intent that consumers would rely upon the deception;

(c)     Defendants' false or misleading representations were made in the course of trade or commerce;

(d)     Defendants' false or misleading representations resulted in actual damage to Plaintiff; and

(e)     Plaintiff's actual damage was proximately caused by Defendants' false or misleading representations.

87.     To make a *prima facie* claim for violation of the UDTPA, Plaintiff must show the following, in pertinent part:

(a)     Defendants knowingly made statements or other representations that created a likelihood of confusion or misunderstanding; and

(b)     Defendants' false or misleading representations were made in the course of trade or commerce.

88.     Defendants knowingly made the following false or misleading representation and material omissions on their websites:

(a) That Plaintiff and Class members could try Defendants' products on a "free" trial basis for 14 days and pay only a nominal charge for shipping and handling, when in fact Plaintiffs and Class members paid an additional $84.63 for the trial bottle;

(b) That Plaintiff and Class members could try Defendants' products on a "free" trial basis with "no commitments or hidden fees" and pay only a nominal charge for shipping and handling, when in fact Defendants subscribed and enrolled Plaintiff and Class members, without their authorization, in Defendants' 6-month negative option purchase commitment whereby Defendants automatically shipped subsequent bottles of product on a monthly basis to Plaintiff and Class members and, without their authorization, charged their credit or debit cards $84.63 for each bottle of product shipped; and/or

(c) That use of "Green Coffee Bean Extract" pills would allow Plaintiff and Class members to "burn fat fast" "without more exercise" even "as you sleep" when in fact "Green Coffee Bean Extract" does not cause substantial weight loss, nor do Defendants possess and rely upon a reasonable basis to substantiate representations that consumers who use "Green Coffee Bean Extract" will lose a substantial amount of weight.

89. Defendants knew or should have know that their statements about "Green Coffee Bean Extract" were false, misleading, and unsubstantiated and that those

statements and material omissions would induce consumers to purchase "Green Coffee Bean Extract".

90.     Defendants' statements and representations were not true and Defendants did not exercise reasonable diligence, care, or competence in obtaining or communication this information.  In fact, Defendants' claims in connection with "Green Coffee Bean Extract" are inconsistent with and/or in conflict with the guidelines and or statements of the federal Food & Drug Administration and Federal Trade Commission which, in an effort to promote real weight loss and to prevent consumers from being defrauded by "miracle pills," instruct that the only proven way to lose weight is either to reduce the caloric intake or increase caloric burn through exercise or both.

91.     Defendants' sale of "Green Coffee Bean Extract" to Plaintiff and Class members as described herein constitutes the conduct "in the course of trade or commerce" within the meaning of the ICFA.

92.     Defendants' sale of "Green Coffee Bean Extract" to Plaintiff and Class members as described herein constitutes a "deceptive act or practice" within the meaning of the ICFA because (1) Defendants mislead Plaintiff and Class members with respect to the actual cost and length of the "free" 14-day trial package; (2) Defendants mislead Plaintiff and Class members subscribed and enrolled customers into the 6-month negative option purchase commitment through the "no commitments" free trial package; (3) Defendants charged Plaintiff and Class members for subsequent bottles of pills under false pretenses, (4) Defendants took advantage of Plaintiff and Class members' lack of knowledge and experience; and/or (5) there is a "gross disparity" between the value

received by Plaintiff and Class members and the $84.63 per bottle price they paid Defendants.

93.     Defendants' false, misleading, and unsubstantiated statements and material omissions in its marketing and advertising of "Green Coffee Bean Extract" as described herein constitute false, deceptive, misleading, and unconscionable practices in violation of the ICFA.

94.     Plaintiff and Class members have suffered actual damages by virtue of paying for "Green Coffee Bean Extract" that they would not have purchased but for Defendants' unfair and unconscionable marketing and advertising.

95.     Pursuant to IFCA, 815 ILCS 505/7 and 505/10, and UDTPA, 815 ILCS 510/3, Plaintiff and Class members seek an order enjoining Defendants' unfair, deceptive and/or unconscionable trade practices that violate the ICFA.

96.     Pursuant to IFCA, 815 ILCS 505/10, Plaintiff and Class members seek to an order awarding them their actual damages.

97.      Pursuant to IFCA, 815 ILCS 505/10, Plaintiff and Class members seek an order awarding them punitive damages.

98.     Pursuant to IFCA, 815 ILCS 505/10 and UDTPA, 815 ILCS 510/3, Plaintiff and Class members seek an order awarding them attorneys' fees and costs of litigation.

## COUNT II

**Violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.***

99.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

100.     Plaintiff brings this claim individually and on behalf of members of the proposed Class 2 against Defendants.

101.     The purpose of the federal Electronic Fund Transfers Act (EFTA) is to establish the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems, and primarily to protect individual consumer rights in such transactions.  15 U.S.C. § 1693(b).

102.     The EFTA requires that any preauthorized electronic fund transfer from a consumer's account be authorized in writing, and that a copy of such authorization be provided to the consumer when made.  EFTA § 907(a), 15 U.S.C. § 1693e(a); Regulation E § 205.10(b), 12 C.F.R. § 205.10(b).

103.     Defendants charged Plaintiff's and Class 2 members' credit/debit accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated from the consumer for preauthorized electronic fund transfers from their accounts in violation of Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a) and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

104.     Defendants charged Plaintiff's and Class 2 members' credit/debit accounts on a recurring basis without providing Plaintiff and Class members with a copy of a written authorization signed or similarly authenticated from the consumer for preauthorized electronic fund transfers from their accounts in violation of Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a) and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

105.     For every violation of the EFTA, Defendants are liable to Plaintiff and Class 2 members in an amount equal to the sum of (1) any actual damages they sustained

by as a result of the violation, and (2) an additional amount allowed by the Court not more than the lesser of $500,000 or 1% of the Defendants' net worth, and (3) reasonable attorneys' fee and costs of the action.  15 U.S.C. § 1693m(a).

106.    Plaintiff and Class 2 members have suffered damages as a result of Defendants' violations of the EFTA and Regulation E.

107.    Pursuant to the EFTA, 15 U.S.C § 1693m(a)(1), Plaintiff and Class 2 members seek an order awarding them their actual damages.

108.     Pursuant to the EFTA, 15 U.S.C § 1693m(a)(2)(B), Plaintiff and Class 2 members seek an order awarding them additional damages in the amount of $500,000 or 1% of Defendants' net worth, whichever is lesser.

109.    Pursuant to the EFTA, 15 U.S.C § 1693m(a)(3), Plaintiff and Class 2 members seek an order awarding them reasonable attorneys' fees and costs of litigation.

## COUNT III

### Violation of the Nevada Deceptive Trade Practices Act, NRS 598.

110.    Plaintiff incorporates by reference and re-alleges each and every general allegation and allegations of Counts I and II set forth above as though fully set forth herein.

111.    Plaintiff brings this claim individually and on behalf of members of the proposed Class 1 and Class 2 members against Defendants.

112.    A person engages in a "deceptive trade practice" under the Nevada Deceptive Trade Practices Act ("NDTPA") if in the course of his or her business or occupation, he or she knowingly:

(a)     Makes any false representation in a transaction, NRS 598.0915(15);

(b)     Fails to disclose a material fact in connection with the sale or lease of goods or service, NRS 598.0923(2); or

(c)     Violates a state or federal statute or regulation relating to the sale or lease of goods or services NRS 598.0923(3).

113.     For the reasons set forth in the allegations of Count I, Defendants violated the NDTPA, NRS 589.0915(15) and 598.0923(2).

114.     Plaintiff and Class 1 members have suffered actual damages by virtue of paying for "Green Coffee Bean Extract" that they would not have purchased but for Defendants' unfair and unconscionable marketing and advertising in violation of the NDPTA.

115.     For the reasons set forth in the allegations of Count II, Defendants violated the NDTPA, NRS 598.0923(3).

116.     Plaintiff and Class 2 members have suffered actual damages by virtue of Defendants' violation of the federal Electronic Funds Transfer Act, EFTA § 907(a), 15 U.S.C. § 1693e(a); Regulation E § 205.10(b), 12 C.F.R. § 205.10(b).

117.     Pursuant to NRS 598.079, Plaintiff and Class members seek an order enjoining Defendants' unfair, deceptive and/or unconscionable trade practices that violate the NDTPA.

118.     Pursuant to NRS 598.0993 and 41.600(3)(a), Plaintiff and Class members seek to an order awarding them their actual damages.

119. Pursuant to NRS 41.600(3)(b), Plaintiff and Class members seek an order awarding them attorneys' fees and costs of litigation.

## Prayer for Relief

WHEREFORE, Plaintiff Rhonda Goeke prays for judgment and relief as follows:

(a) Certification this lawsuit as a class action pursuant to Fed R. Civ. P. 23, appoint Plaintiff Rhonda Goeke as the representative of the Class, and appoint attorneys Matthew H. Armstrong and David C. Nelson as Class Counsel;

(b) An Order preliminarily enjoining Defendants from continuing to engage in the unlawful conduct and practices described herein and for ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and the appointment of a receiver;

(c) Judgment in favor of Plaintiff and against Defendants on each and every count contained in Plaintiff's Complaint;

(d) An Order permanently enjoining Defendants from continuing to engage in the unlawful conduct and practices described herein pursuant to IFCA, 815 ILCS 505/7 and 505/10, and UDTPA, 815 ILCS 510/3, or as authorized by law and determined by the Court;

(e) An order awarding Plaintiff her actual damages in the amount of $423.15 and Class 1 members their actual damages in an amount to

bet determined at trial pursuant to IFCA, 815 ILCS 505/10 and/or NRS 598.0993 and 41.600(3)(a);

(f)    An Order awarding Plaintiff and Class 1 members punitive damages in an amount to be determined at trial treble damages pursuant to IFCA, 815 ILCS 505/10;

(g)    An Order awarding restitution, refund of monies paid, and/or disgorgement to Plaintiff and Class 1 members of an amount to be determined at trial;

(h)    An Order awarding Plaintiff and Class 1 members reasonable attorneys' fees and costs of litigation pursuant to IFCA, 815 ILCS 505/10, and UDTPA, 815 ILCS 510/3, and/or NRS 41.600(3)(b), or as authorized by law and determined by the Court;

(i)    An Order awarding Plaintiff and Class 2 members their actual damages pursuant to EFTA, 15 U.S.C § 1693m(a)(1);

(j)    An Order awarding Plaintiff and Class 2 members additional damages in the amount of $500,000 or 1% of Defendants' net worth, whichever is lesser, pursuant to 15 U.S.C § 1693m(a)(2)(B);

(k)    An Order awarding Plaintiff and Class 2 members reasonable attorneys' fees and costs of litigation pursuant 15 U.S.C § 1693m(a)(3), as determined by the Court; and

(l)    An Order granting such other and further relief as may be just and proper.

Dated: July 16, 2014

Respectfully submitted,

s/ Matthew H. Armstrong

Matthew H. Armstrong (ARDC 6226591)
ARMSTRONG LAW FIRM LLC
8816 Manchester Rd., No. 109
St. Louis MO 63144
Tel:    314-258-0212
Email: matt@mattarmstronglaw.com

David C. Nelson
NELSON & NELSON P.C.
420 North High Street
Belleville IL 62220
Tel:    618-277-4000
Email: dnelson@nelsonlawpc.com

Attorneys for Plaintiff and the Putative Class